**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1819

CITY OF HUNTINGTON, WEST VIRGINIA,

        Plaintiff - Appellant,

   v.

AMERISOURCEBERGEN DRUG CORPORATION; CARDINAL HEALTH, INC.; MCKESSON CORPORATION,

        Defendants - Appellees.

------------------------------

LEGAL SCHOLARS,

        Amicus Curiae,

THE NATIONAL ASSOCIATION OF COUNTIES; THE COUNTY EXECUTIVES OF AMERICA; THE NATIONAL LEAGUE OF CITIES; THE U.S. CONFERENCE OF MAYORS; THE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION; THE WEST VIRGINIA SHERIFFS' ASSOCIATION; AMERICAN PUBLIC HEALTH ASSOCIATION; NATIONAL ASSOCIATION OF COUNTY AND CITY HEALTH OFFICIALS,

        Amici Supporting Appellant.

No. 22-1822

CABELL COUNTY COMMISSION,

        Plaintiff - Appellant,

   v.

AMERISOURCEBERGEN DRUG CORPORATION; CARDINAL HEALTH, INC.; MCKESSON CORPORATION,

        Defendants - Appellees,

and

CVS HEALTH CORPORATION; WALGREENS BOOTS ALLIANCE, INC.; THE KROGER COMPANY; RITE AID CORPORATION,

        Defendants.

-------------------------------

LEGAL SCHOLARS,

        Amicus Curiae,

THE NATIONAL ASSOCIATION OF COUNTIES; THE COUNTY EXECUTIVES OF AMERICA; THE NATIONAL LEAGUE OF CITIES; THE U.S. CONFERENCE OF MAYORS; THE INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION; THE WEST VIRGINIA SHERIFFS' ASSOCIATION; AMERICAN PUBLIC HEALTH ASSOCIATION; NATIONAL ASSOCIATION OF COUNTY AND CITY HEALTH OFFICIALS,

        Amici Supporting Appellant.

Appeals from the United States District Court for the Southern District of West Virginia, at Huntington.  David A. Faber, Senior District Judge.  (3:17−cv−01362; 3:17−cv−01665)

Argued:  January 25, 2024                                Decided:  March 18, 2024

Before KING and BENJAMIN, Circuit Judges, and KEENAN, Senior Circuit Judge.

Question certified to the Supreme Court of Appeals of West Virginia by published order. Senior Judge Keenan directed entry of the order with the concurrence of Judge King and Judge Benjamin.

2

**ARGUED:** David Charles Frederick, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK P.L.L.C., Washington, D.C., for Appellant. Paul William Schmidt, COVINGTON & BURLING, LLP, Washington, D.C.; Enu Mainigi, WILLIAMS & CONNOLLY LLP, Washington, D.C; Robert A. Nicholas, REED SMITH, LLP, Philadelphia, Pennsylvania, for Appellees. **ON BRIEF:** Louis M. Bograd, Michael J. Quirk, MOTLEY RICE LLC, Washington, D.C., for Appellant City of Huntington, West Virginia. Anthony J. Majestro, Christina L. Smith, POWELL & MAJESTRO, PLLC, Charleston, West Virginia, for Appellant Cabell County Commission. Ariela M. Migdal, Lillian V. Smith, Matthew N. Drecun, Kathleen W. Hickey, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Appellants. F. Lane Heard III, George A. Borden, Ashley W. Hardin, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee Cardinal Health, Inc. Timothy C. Hester, Christian J. Pistilli, Stephen F. Petkis, Nicole M. Antoine, COVINGTON & BURLING LLP, Washington, D.C., for Appellee McKesson Corporation. Kim M. Watterson, Pittsburgh, Pennsylvania, Joseph J. Mahady, REED SMITH LLP, Philadelphia, Pennsylvania, for Appellee AmerisourceBergen Drug Corporation. Leslie Kendrick, Charlottesville, Virginia; Michael J. Skoler, SOKOLOVE LAW, LLC, Chestnut Hill, Massachusetts; Ruthanne M. Deutsch, Hyland Hunt, DEUTSCH HUNT PLLC, Washington, D.C., for Amici Legal Scholars. Robert B. Nealon, NEALON & ASSOCIATES, P.C., Alexandria, Virginia; J. Carl Cecere, CECERE PC, Dallas, Texas, for Amici The National Association of Counties, The County Executives of America, The National League of Cities, The U.S. Conference of Mayors, The International Municipal Lawyers Association, and the West Virginia Sheriffs' Association. Henry G. Garrard, III, BLASINGAME, BURCH, GARRARD & ASHLEY, P.C., Athens, Georgia; Deepak Gupta, Gregory A. Beck, GUPTA WESSLER PLLC, Washington, D.C., for Amici American Public Health Association and National Association of County and City Health Officials.

―――――――――

## ORDER

BARBARA MILANO KEENAN, Senior Circuit Judge:

The United States Court of Appeals for the Fourth Circuit, exercising the privilege afforded by the State of West Virginia through the Uniform Certification of Questions of Law Act, West Virginia Code §§ 51-1A-1 through 51-1A-13, requests that the Supreme Court of Appeals of West Virginia exercise its discretion to answer the following question:

> Under West Virginia's common law, can conditions caused by the distribution of a controlled substance constitute a public nuisance and, if so, what are the elements of such a public nuisance claim?

A negative answer to this question is outcome determinative in the present appeal. Moreover, in our view, the fact that there is no controlling appellate decision, constitutional provision, or statute of West Virginia answering this question renders it appropriate for certification. *See* W. Va. Code § 51–1A–3. We acknowledge that the Supreme Court of Appeals of West Virginia may restate this question. *See id.* §§ 51-1A-4, 51-1A-6(a)(3).

I.

A.

The Cabell County Commission and the City of Huntington, West Virginia (the plaintiffs) filed suit in 2017 against three distributors of opioids: AmerisourceBergen Drug Corporation, Cardinal Health, Inc., and McKesson Corporation (the distributors or the

defendants).[1] The plaintiffs alleged that these companies "created, perpetuated, and maintained" the opioid epidemic by repeatedly shipping to pharmacies orders of opioids in quantities that the distributors "knew or should have known exceed[ed] any legitimate market" for the drugs. The plaintiffs contended that the defendants' conduct resulted in a public nuisance that was subject to abatement under West Virginia common law.

After holding a bench trial in 2021, the district court issued an opinion under Federal Rule of Civil Procedure 52, ruling in favor of the distributors. *City of Huntington v. AmerisourceBergen Drug Corp.*, 609 F. Supp. 3d 408, 412 (S.D.W. Va. 2022). As a threshold matter, the district court held that West Virginia's common law of public nuisance did not cover the plaintiffs' claims. *Id.* at 475. The district court, recognizing that the Supreme Court of Appeals of West Virginia (Supreme Court of Appeals) had not ruled on this issue, predicted that the state court would decline to extend West Virginia's common law of public nuisance to the sale, distribution, and manufacture of opioids. *Id.* at 472, 475. In reaching this conclusion, the district court cited the Restatement (Third) of Torts and observed that the Supreme Court of Appeals had applied the common law of public nuisance only "in the context of conduct that interferes with public property or resources." *Id.* at 472. The district court also held that extension of the common law of

---

[1] The plaintiffs originally filed separate lawsuits that included other parties and claims. However, after the United States Judicial Panel on Multidistrict Litigation transferred both Huntington's and Cabell County's suits to the Northern District of Ohio (the MDL court), the MDL court designated the suits as "Track Two" bellwether cases and directed the parties to "streamline" their claims. The plaintiffs thereafter narrowed their claims to a public nuisance suit against the three distributor defendants in the present appeal. The MDL court later remanded the case to the Southern District of West Virginia, which consolidated the cases for trial.

5

public nuisance to cover the plaintiffs' claims would be "inconsistent with the history and traditional notions of nuisance." *Id.* The district court did not find persuasive two West Virginia circuit court decisions in which those courts held that the common law of public nuisance may apply to the sale and distribution of opioids.[2] *Id.* The district court explained:

> To apply the law of public nuisance to the sale, marketing and distribution of products would invite litigation against any product with a known risk of harm, regardless of the benefits conferred on the public from proper use of the product. The economic harm and social costs associated with these new causes of action are difficult to measure but would obviously be extensive.

*Id.* at 474.

The district court also rejected the plaintiffs' proposed remedy, namely, a 15-year "Abatement Plan" developed by Dr. G. Caleb Alexander, an expert in opioid abatement intervention. *Id.* at 417, 470–71, 484. Dr. Alexander testified at trial that the opioid epidemic and the resulting harms from the epidemic were "reasonably certain to continue" absent implementation of a $2.5 billion abatement plan, which would address "[p]revention, treatment, recovery, and special populations."

The district court held that this relief was "not properly understood" as falling within "the nature of abatement." *Id.* at 484. The court found that the plan did not restrict the defendants' conduct or their distribution of opioids but generally proposed programs and

---

[2] *See id.* at 473 (citing *Brooke Cnty. Comm'n v. Purdue Pharma L.P.*, No. 17-C-248, 2018 WL 11242293 (W. Va. Cir. Ct. Dec. 28, 2018), *writ denied*, No. 19-0210 (W. Va. June 4, 2019), and *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, No. 12-C-141, 2014 WL 12814021 (W. Va. Cir. Ct. Dec. 12, 2014), *writ denied*, No. 15-1026 (W. Va. Jan. 5, 2016)).

6

services to address "the attendant harms caused by opioid abuse and addiction." *Id.* at 470. The court reasoned that the costs of the plan had "no direct relation to any of [the distributors'] alleged misconduct" and thus did not qualify as abatement. *Id.* at 483.[3]

After the district court entered final judgment for the distributors, the plaintiffs timely appealed.

B.

Before setting forth the parties' arguments, we summarize the statutory and regulatory framework under which the United States Drug Enforcement Administration (DEA) gives persons and entities the authority to distribute controlled substances, namely, the Controlled Substances Act (CSA), 21 U.S.C. §§ 801–904, and its implementing regulations.[4] We later briefly describe the specific facts giving rise to the plaintiffs' public nuisance claim against the distributors.

---

[3] The district court also held that the plaintiffs had not shown that the distributors' conduct was unreasonable or was a proximate cause of any nuisance. *Id.* at 449, 476. Notably, however, we need address the district court's alleged errors on reasonableness and causation only if the Supreme Court of Appeals recognizes public nuisance as a cognizable claim in this case. We thus conclude that the district court's holdings in that regard are not "relevant to the [certified] question[s]," and we do not describe them here. W. Va. Code § 51-1A-6(a)(2).

[4] In their separate challenges to the district court's holdings on reasonableness and causation, the plaintiffs contend that the distributors violated their duties under the Controlled Substances Act and the West Virginia Controlled Substances Act by failing to identify or investigate suspicious orders of opioids, and by raising ordering thresholds to allow pharmacies to place large orders of opioids "without triggering review." We do not expand on the plaintiffs' separate arguments in this Order because the plaintiffs contend that a condition can constitute a public nuisance even if the conduct that causes the condition is lawful. Nevertheless, we set forth the relevant statutory framework in the event that the Supreme Court of Appeals determines that the legality of the defendants' (Continued)

7

When Congress passed the CSA, it acknowledged that many controlled substances "have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people." 21 U.S.C. § 801(1). Congress also recognized, however, the potential for abuse of such substances and the "need to prevent the diversion of drugs from legitimate to illicit channels." *Gonzales v. Raich*, 545 U.S. 1, 13 (2005); *see also* 21 U.S.C. § 801(2). Thus, Congress created in the CSA a "closed regulatory system" in which only entities registered with the DEA may manufacture, distribute, or dispense controlled substances.[5] *Raich*, 545 U.S. at 13; *see* 21 U.S.C. §§ 822, 823.

A controlled substance is placed in a schedule based on the drug's potential for being abused. 21 U.S.C. § 812; *John Doe, Inc. v. DEA*, 484 F.3d 561, 563 (D.C. Cir. 2007). As relevant here, Schedule II substances include oxycodone, hydrocodone, and other opioids that have both a currently accepted medical use and a "high potential for abuse" that may lead to "severe psychological or physical dependence." 21 U.S.C. § 812(b)(2); 21 C.F.R. § 1308.12.

Within the supply chain for controlled substances, DEA-registered entities include manufacturers, distributors, and pharmacies, which dispense controlled substances based

---

actions affects the availability of a public nuisance remedy. *Cf. Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253, 257 (W. Va. 1992) (explaining that the Supreme Court of Appeals has "consistently reaffirmed" that even a "business lawful in itself" may constitute a public nuisance if "a particular use of real property" is unreasonable in relation to the particular locality involved).

[5] The United States Attorney General delegated many of its authorities under the CSA to the DEA Administrator. *See* 21 U.S.C. § 871(a); 28 C.F.R. § 0.100(b).

on prescriptions written by registered doctors.[6] All registrants, including distributors, must "provide effective controls and procedures to guard against . . . diversion of controlled substances." 21 C.F.R. § 1301.71(a). A registrant must "design and operate a system to disclose to the registrant suspicious orders of controlled substances," and the registrant "shall inform" the DEA of suspicious orders it discovers.[7] 21 C.F.R. § 1301.74(b); *see Huntington*, 609 F. Supp. 3d at 425 (finding that each defendant in the present case maintained a suspicious order monitoring system). The regulations categorize as "suspicious" "orders of unusual size, orders deviating substantially from a normal pattern, and orders of unusual frequency." 21 C.F.R. § 1301.74(b).[8]

Despite the controls set forth in the CSA, the opioid epidemic has led to "an extraordinary public health crisis that started at least two decades ago and has accelerated over the past decade." *Huntington*, 609 F. Supp. 3d at 419. The plaintiffs, the City of

---

[6] When determining whether to register a distributor applicant, the DEA considers public interest factors such as the applicant's maintenance of effective controls against diversion, compliance with applicable state and local laws, prior conviction record, past experience in the distribution of controlled substances, and other factors that may be relevant to public health and safety. 21 U.S.C. § 823(b).

[7] Congress codified the suspicious order reporting requirement in the Substance Use-Disorder Prevention that Promotes Opioid Recovery and Treatment for Patients and Communities (SUPPORT) Act. Pub. L. No. 115-271, §§ 3291–92, 132 Stat. 3894, 3956 (Oct. 24, 2018), *codified at* 21 U.S.C. § 832.

[8] *Morris & Dickson Co., LLC*, 88 Fed. Reg. 34523-01, 34535 (DEA May 30, 2023) (outlining other "red flags"); *Masters Pharm., Inc. v. DEA*, 861 F.3d 206, 212 (D.C. Cir. 2017) (holding that a distributor must either decline to ship or conduct due diligence before shipping a suspicious order (citing *Southwood Pharm., Inc.*, 72 Fed. Reg. 36487, 36501 (DEA July 3, 2007)).

9

Huntington and Cabell County, West Virginia, have a combined population of about 100,000 people and have been "among the West Virginia communities hardest hit by the opioid epidemic." *Id.* at 419–20. Neighborhoods throughout Huntington and Cabell County have experienced increased crime rates and decreasing property values. *Id.* at 421. Hundreds of pregnant women in Huntington and Cabell County have been admitted for treatment of opioid use disorder and, at times, up to 10 percent of babies born at Cabell and Huntington Hospital have suffered from neonatal abstinence syndrome.[9] *Id.* at 420. The number of children placed in foster care has doubled. *Id.* Infectious disease rates have sharply increased. *Id.* at 420–21. People who inject drugs represented 90 percent of new HIV cases in 2019, and cases of Hepatitis B and C in Cabell County have far exceeded national averages. *Id.*

As of 2017, more than 10 percent of the population of Huntington and Cabell County was or had been addicted to opioids. *Id.* at 420. Between 2001 and 2018, 1,151 individuals died from drug overdoses in Cabell County. *Id.* Of those individuals, 1,002 died from opioid-related overdoses. *Id.* Between 2001 and 2017, the fatal drug overdose rate in Cabell County increased from 16.6 to 213.9 individuals per 100,000 people. *Id.* And, at the time of the 2021 bench trial before the district court, prescription opioids "remain[ed] . . . an ongoing and significant cause of drug overdose deaths in Cabell and Huntington." *Id.* at 421. With this background in mind, we turn to the threshold question

---

[9] Neonatal abstinence syndrome (NAS) occurs in newborns "exposed in utero to drugs taken by the mother." Dorland's Illustrated Medical Dictionary 1840 (32d ed. 2012). Newborns with NAS show signs of substance withdrawal such as tremors, sweating, yawning, poor feeding, and sleep disturbance. *Id.*

10

before us, namely, whether conditions caused by the distribution of a controlled substance can constitute a public nuisance under West Virginia common law.[10]

II.

Under West Virginia common law, a public nuisance is "an act or condition that unlawfully operates to hurt or inconvenience an indefinite number of persons." *State ex rel. Smith v. Kermit Lumber & Pressure Treating Co.*, 488 S.E.2d 901, 921 (W. Va. 1997) (citation omitted); *Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253, 257 n.6 (W. Va. 1992); *see also* Restatement (Second) of Torts § 821B (1979) ("A public nuisance is an unreasonable interference with a right common to the general public."). This includes "anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort." *Sharon Steel Corp. v. City of Fairmont*, 334 S.E.2d 616, 621 (W. Va. 1985). "As suggested by this broad definition, nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations." *Id.*

The parties dispute whether West Virginia's common law of public nuisance covers the defendants' distribution of opioids. Initially, the plaintiffs argue that the "nuisance" at issue is the "harm to public health and other resources" allegedly caused by the defendants' distribution of opioids. The plaintiffs contend that, like courts in many other states, West Virginia trial courts have "repeatedly allowed government entities to bring public nuisance

---

[10] When exercising diversity jurisdiction, "a federal court must apply the law of the forum state as it is interpreted by the state's highest court." *Moore v. Equitrans, L.P.*, 27 F.4th 211, 220 (4th Cir. 2022) (citation and quotation marks omitted).

11

claims concerning opioids." Moreover, the plaintiffs assert that the Supreme Court of Appeals has applied the common law of public nuisance to "commodities," "the manufacture and distribution of products," and "otherwise-lawful business activities . . . when conducted in a manner that harms the public."

The plaintiffs also emphasize that the Supreme Court of Appeals has not adopted the Restatement (Third) of Torts, which states that "the common law of public nuisance is an inapt vehicle for addressing" harms related to products. Restatement (Third) of Torts: Liab. for Econ. Harm § 8 (2020). Additionally, the plaintiffs contend that even if the common law definition of public nuisance covers only conduct that interferes with public property or "resources," the present case "involves clear interference with public resources" in the plaintiffs' communities. Finally, the plaintiffs argue that out-of-state decisions such as *State ex rel. Hunter v. Johnson & Johnson*, 499 P.3d 719 (Okla. 2021), do not affect the viability of a public nuisance claim under West Virginia common law.

The distributors respond that the Supreme Court of Appeals has applied the common law of public nuisance only in the context of conduct that interferes with public property such as highways, public grounds, harbors and landings, or shared resources such as clean air and water. The distributors also reject the plaintiffs' interpretation of Supreme Court of Appeals precedent, contending that the cases relied on by the plaintiffs did not involve the distribution of products but, rather, involved the use of property to pollute public resources with hazardous waste or the use of property in a way that created a "constant danger" to the public. The defendants also observe that the West Virginia trial court decisions permitting public nuisance claims to proceed beyond the motion to dismiss stage

12

are not precedential authority affecting the present case and suggest that the Oklahoma Supreme Court's decision in *Hunter* should guide the interpretation of the common law of public nuisance in West Virginia. *See Hunter*, 499 P.3d 719.

Moreover, the defendants contest the plaintiffs' characterization of the alleged injury, arguing that harm to an individual results in "at most, a violation of the *private right* not to be personally injured." Application of the common law of public nuisance to harms caused by the distribution of opioids, they contend, would "mean that every seller of a product that arguably affects public health . . . could be liable for public nuisance." The defendants urge adoption of the Restatement (Third) of Torts as applied to the plaintiffs' claims here, arguing that mass harms caused by dangerous products "are better addressed through the law of products liability."[11]

### III.

The Supreme Court of Appeals has not determined whether the common law of public nuisance may apply to conditions caused by distribution of a potentially dangerous

---

[11] Several legal scholars respond to these points in an amicus brief. Initially, amici contend that the "floodgate concerns" of the defendants and the district court are "unwarranted." Because the common law of public nuisance "retains many of the traditional limits of tort liability," liability for creating a public nuisance is constrained by the requirements that the alleged nuisance be "unreasonable" and interfere with a "public right." Amici also reject the contention that public nuisance claims duplicate or serve an "an end run around" for products liability claims. Amici argue that while product liability claims focus on "harms specifically borne by discrete individuals," "public nuisance claims serve a different function, focusing on 'harms to the public,' including public health, social welfare, and security." Similarly, amici explain that public nuisance claims address conditions that "unreasonably interfere with the rights of people who are not themselves harmed by consumption of the product."

product. Indeed, public nuisance cases in West Virginia traditionally have addressed hazards or inconveniences affecting property or resources. *See Sharon Steel Corp.*, 334 S.E.2d at 621 (collecting cases from 1878 to 1982); *see also Kermit*, 488 S.E.2d at 906 (public nuisance claim against lumber company that failed to eliminate hazardous waste resulting from its lumber treatment process). Nonetheless, we do not view as dispositive the fact that the Supreme Court of Appeals has not yet applied principles of public nuisance to the distribution of a product. And we hesitate to infer such limits on West Virginia's common law of public nuisance in light of the broad language used by the Supreme Court of Appeals in describing public nuisance claims, *see Sharon Steel*, 334 S.E.2d at 621, and in light of decisions by West Virginia trial courts holding that common law claims of public nuisance are cognizable against distributors of opioids.

For example, in *State ex rel. Morrisey v. AmerisourceBergen Drug Corp.*, a West Virginia circuit court held that West Virginia had "sufficiently assert[ed]" a claim for public nuisance by "sufficiently alleg[ing that] the safety and health and morals of the people of West Virginia ha[d] been compromised due to Defendants' alleged wrongful influx of addictive, controlled substances into West Virginia, thereby causing substantial injury to West Virginia citizens and taxpayers." No. 12-C-141, 2014 WL 12814021, at *10 (W. Va. Cir. Ct. Dec. 12, 2014), *writ denied*, No. 15-1026 (W. Va. Jan. 5, 2016). Similarly, in *Brooke County Commission v. Purdue Pharma L.P.*, a circuit court held that the common law of public nuisance is "not limited to property disputes," and that the distributor defendants had "interfered with a public right, including the public health." No.

14

17-C-248, 2018 WL 11242293, at *1 (W. Va. Cir. Ct. Dec. 28, 2018), *writ denied*, No. 19-0210 (W. Va. June 4, 2019).[12]

The West Virginia Mass Litigation Panel (MLP)[13] also has concluded in multiple instances that the distribution of opioids can form the basis of a public nuisance claim under West Virginia common law. When considering a motion to dismiss filed by the same distributors in this case, the MLP denied the distributors' motion and "adopt[ed] and incorporate[d] by reference" the findings of fact and conclusions of law from *Brooke County*. *Order Denying the Distributor Defendants' Motion to Dismiss Plaintiffs' Complaint*, Civil Action No. 19-C-1900, at 3 (W. Va. MLP Oct. 31, 2019), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/OrderDenyingDistributor DefendantsMTD.pdf [https://perma.cc/2CHF-8CEK]. Moreover, after the district court issued its decision in the present case, the MLP stated that the district court's "placement of an artificial external constraint on the common law cause of action for public nuisance is inconsistent with the Supreme Court of Appeals' longstanding recognition that a public nuisance is *any* act or condition that 'operates to hurt or inconvenience an indefinite

---

[12] In both *Brooke County* and *Morrisey*, the Supreme Court of Appeals refused the defendants' petitions for a writ of prohibition following the trial courts' denials of their motions to dismiss. *See* W. Va. Code § 53-1-1; *Brooke Cnty.*, 2018 WL 11242293; *Morrisey*, 2014 WL 12814021.

[13] The MLP consists of seven active or senior status circuit court judges appointed by the Chief Justice, with the approval of the Supreme Court of Appeals. Mass Litigation Panel, *Overview*, *available at* https://www.courtswv.gov/lower-courts/mass-litigation-panel [https://perma.cc/PBT5-3KQS]. As of 2021, West Virginia cities, counties, hospitals, and the State had brought more than eighty lawsuits against manufacturers and distributors of opioids. *See State ex rel. AmerisourceBergen Drug Corp. v. Moats*, 859 S.E.2d 374, 378 (W. Va. 2021).

15

number of persons,' and that 'nuisance is a flexible area of the law that is adaptable to a wide variety of factual situations.'"[14] *Findings of Fact and Conclusions of Law on Order Denying Pharmacy Defendants' Motions to Dismiss Complaints and Amended Motions*, Civil Action No. 21-C-9000-PHARM, at 30 (W. Va. MLP Aug. 3, 2022) (citations omitted), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/8-3-22FOF-COLandOrderDenyingPharmacyMTDs.pdf [https://perma.cc/Y74N-W426]; *see also Findings of Fact and Conclusions of Law and Order Denying Defendants' Motion for Summary Judgment Re: "Factual Issue #2"*, Civil Action No. 21-C-9000 Distributor, at 1-6 (W. Va. MLP July 1, 2022) (holding that "West Virginia public nuisance law encompasses plaintiffs' opioid claims" against the distributor defendants), *available at* https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/7-1-22OrderDenyingFactualIssue2.pdf [https://perma.cc/PJ3Y-SR56]; *Amended Order Regarding Rulings Issued During March 25, 2022, Pretrial Conference*, Civil Action No. 21-C-9000 MFR, at 4 (W. Va. MLP May 23, 2022) (declining to follow the Oklahoma Supreme Court's ruling in *Hunter*), https://www.courtswv.gov/sites/default/pubfilesmnt/2023-07/5-23-22AmendedPretrialRulingsOrder21-C-9000MFR.pdf [https://perma.cc/5NK3-LXPV].

Finally, we do not think that the authorities cited by the defendants, namely, the Oklahoma Supreme Court's decision in *Hunter*, 499 P.3d 719, and the Restatement (Third)

---

[14] *Cf. also Lemongello v. Will Co.*, No. CIV.A. 02-C-2952, 2003 WL 21488208, at *2 (W. Va. Cir. Ct. June 19, 2003) ("This Court finds that West Virginia law does not limit claims of public nuisance to those dealing with real property. Further, although the Defendants argued the necessity of an unlawful act to sustain nuisance, this Court finds the same is not necessary to create a public nuisance.").

16

of Torts, control the outcome of this case. With regard to *Hunter*, 499 P.3d 719, decisions from other courts of last resort are "entitled to great respect" but are "not of controlling force or effect or binding in authority" upon the Supreme Court of Appeals. *State v. Blatt*, 774 S.E.2d 570, 579 (W. Va. 2015) (quoting *Burless v. W. Va. Hosps., Inc.*, 601 S.E.2d 85, 94 n.9 (W. Va. 2004)).

With regard to the Restatement (Third) of Torts, we observe that the Supreme Court of Appeals has not issued a decision directly addressing the Third Restatement's position on this issue. *Cf. Duff*, 421 S.E.2d at 256 (relying on Restatement (Second) of Torts). Under "Liability for Economic Harm," section 8 of the Third Restatement addresses the potential liability of a defendant who creates a public nuisance "that results in economic loss to the plaintiff," and provides that suits seeking to recover for public nuisance against the makers of products "ha[ve] been rejected by most courts . . . because the common law of public nuisance is an inapt vehicle for addressing the conduct at issue." Restatement (Third) of Torts: Liab. for Econ. Harm § 8 cmt. g. But the plaintiffs here have abandoned their claim for "past damages for economic losses" against the defendants, and section 8 of the Third Restatement instructs readers to refer to the Restatement (Second) of Torts for a general discussion of public nuisance that extends beyond "liability for economic loss." *Id.* § 8. Moreover, the text of section 8 expressly outlines the limits of its application by acknowledging that it applies to private suits, rather than to public nuisance claims brought by public officials. *Id.*

We thus recognize the potentially limited application of the Third Restatement to the present case. And, having reviewed principles of the common law of public nuisance

17

as reflected in decisions by the Supreme Court of Appeals, as well as in trial court decisions in West Virginia addressing public nuisance claims against distributors of controlled substances, we conclude that no controlling appellate decision answers the question whether conditions caused by the distribution of a controlled substance can constitute a public nuisance under West Virginia common law and, if so, what the elements are of such a claim.[15] *Cf. also State v. Myers*, 602 S.E.2d 796, 802 n.10 (W. Va. 2004) (explaining that unless there is a "dearth" of published opinions on an issue, the Supreme Court of Appeals ordinarily does not cite unpublished decisions).

IV.

Under the privilege made available by the West Virginia Uniform Certification of Questions of Law Act, it is hereby ORDERED: (1) That the question stated above be, and the same hereby is, certified to the Supreme Court of Appeals of West Virginia; (2) that the Clerk of this Court forward to the Supreme Court of Appeals of West Virginia, under the official seal of this Court, a copy of this order and, to the extent requested by the Supreme Court of Appeals of West Virginia, the original or a copy of the record in this Court; and (3) that any request for all or part of the record be fulfilled by the Clerk of this Court simply upon notification from the Clerk of the Supreme Court of Appeals.

The names and addresses of counsel of record for the parties are:

---

[15] The Supreme Court of Appeals has outlined a "reasonableness" test for public nuisance claims, but the test refers specifically to the use of real property. *Duff*, 421 S.E.2d at 257 (citation omitted). Similarly, the Restatement (Second) of Torts describes reasonableness and causation in the context of, and by using examples relating to, the use and enjoyment of land. *See, e.g.*, Restatement (Second) of Torts §§ 826, 828, 834, 840E.

Counsel for City of Huntington, West Virginia
Louis M. Bograd
Motley Rice LLC
Suite 630
401 9th Street, NW
Washington, DC 20004

Michael J. Quirk, Esq.
Motley Rice LLC
Suite 104
40 West Evergreen Avenue
Philadelphia, PA 19118-3324

Counsel for Cabell County Commission
Anthony J. Majestro
Christina L. Smith
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, West Virginia 25331

Counsel for City of Huntington and Cabell County Commission
David Charles Frederick
Kathleen White Hickey
Ariela Miriam Migdal
Lillian Virginia Smith
Kellogg Hansen Todd Figel & Frederick PLLC
Suite 400
1615 M Street, NW
Washington, DC 20036

Counsel for AmerisourceBergen Drug Corporation
Joseph J. Mahady
Robert A. Nicholas
Reed Smith, LLP
Suite 3100
3 Logan Square
1717 Arch Street
Philadelphia, PA 19103

Kim M. Watterson
Reed Smith, LLP
Suite 2900

19

355 South Grand Avenue
Los Angeles, CA 90071

Counsel for Cardinal Health, Incorporated
George A. Borden
Ashley Wall Hardin
Frank Lane Heard, III
Enu Mainigi
Williams & Connolly LLP
680 Maine Avenue, SW
Washington, DC 20024

Counsel for McKesson Corporation
Nicole Antoine
Timothy Channing Hester
Stephen F. Petkis
Christian James Pistilli
Paul William Schmidt
Covington & Burling, LLP
1 City Center
850 10th Street, NW
Washington, DC 20001-4956

      This Order is entered by Senior Circuit Judge Keenan, with the concurrence of Judge King and Judge Benjamin.

QUESTION CERTIFIED

FOR THE COURT:

*Barbara M. Keenan*

_____
Barbara Milano Keenan
United States Circuit Judge

A True Copy NWAMAKA ANOWI

Clerk of the United States Court of Appeals for the Fourth Circuit

_Nwamaka Anowi_

20